**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 14 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UTA NAUERT and ROBERT F.
NAUERT,

      Plaintiffs-Appellants,

v.

NAVA LEISURE USA, INC.,

      Defendant-Appellee.

No. 99-1073
(D.C. No. 90-N-464)
(District of Colorado)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and **ROGERS**[**], Senior District Judge.

      The issue in this case is whether a "forum selection" provision in an insurance

policy is enforceable. The essential facts are not in dispute.

      Assicurazioni Generali, S.p.A. ("Generali"), an Italian insurance company, issued

a products liability insurance policy, effective December 31, 1985, to Nava Moto, S.p.A.,

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]Honorable Richard D. Rogers, Senior District Judge of the District of Kansas, sitting by designation.

and Nava Leisure, S.p.A., Italian companies which design and manufacture what is known in the trade as the Nava Ski System which consists of a soft ski boot and special binding mounted on conventional skis. The policy was issued in Italy and was written in Italian. Nava Leisure, USA, a Delaware corporation with offices in Connecticut, was a duly licensed distributor of the ski boot in the United States, and under the policy of insurance here involved was an additional named insured. The policy issued by Generali contained a provision that all disputes arising under the policy would be litigated in Milan, Italy.

Robert and Uta Nauert, husband and wife, were residents of Wisconsin and were on a ski vacation in Aspen, Colorado on March 18, 1988, when Uta Nauert was injured in a skiing accident. Prior thereto, Uta Nauert and her husband had rented ski boots from the Pomeroy Ski Shop in Aspen, which boots had been designed and manufactured by Nava Moto, S.p.A., and Nava Leisure, S.p.A., in Italy, and distributed by Nava Leisure, USA, to the Pomeroy Ski Shop. Thereafter, on March 19, 1990, Uta and Robert Nauert filed an action in the United States District Court for the District of Colorado against the Pomeroy Ski Shop, a Missouri corporation, and Nava Leisure, USA, alleging that Uta Nauert's injuries sustained in the skiing accident were caused by the ski boot, and that the two defendants were negligent in providing the ski boot to Uta Nauert when the boot was "unstable, defective and unreasonably dangerous." Jurisdiction was based on diversity of citizenship. 28 U.S.C. § 1332. The Nauerts later settled their claim against

the Pomeroy Ski Shop, and still later obtained a default judgment against Nava Leisure, USA, on June 2, 1992, in the amount of $211,011.57.

The policy of insurance here involved was allegedly in force and effect at the time of Uta Nauert's injuries. Accordingly, on March 3, 1993, the Nauerts caused a writ of garnishment to be served on Generali, service being obtained on Generali through the offices of the Colorado Insurance Commissioner, Generali being a foreign insurance company which conducted business in Colorado. Generali failed to timely respond to the writ, and a default judgment was obtained against Generali in the amount of $195,188.57 on July 14, 1994.

On September 7, 1994, Generali filed a motion to set aside the default judgment thus entered against it on the grounds that it had not received notice of the writ from the Colorado Insurance Commissioner until after the default judgment had been entered. In connection with that motion, Generali asserted that it had a meritorious defense to the writ and further that the forum selection clause in the insurance policy divested the United States District Court for the District of Colorado of jurisdiction to hear the garnishment proceeding. On May 18, 1995, Generali's motion to set aside was referred to a magistrate judge for recommendation. On July 21, 1995, Magistrate Judge Bruce D. Pringle recommended that Generali's motion to set aside be granted. The Nauerts objected to the magistrate judge's recommendations. On March 31, 1997, the district court granted Generali's motion to set aside the default judgment entered against

Generali and recommitted the case to the magistrate judge for further proceedings. On May 23, 1997, Generali filed a motion to dismiss the garnishment proceeding based on the forum selection provision contained in its policy. On July 11, 1997, Magistrate Judge Pringle recommended that Generali's motion to dismiss be granted. The Nauerts objected to the magistrate's recommendation. On January 19, 1999, the district court accepted the magistrate's recommendation and dismissed the garnishment proceeding. The Nauerts appealed the dismissal of their garnishment. We affirm.

The starting point in our discussion is *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). Prior to *Bremen*, the courts generally looked with disfavor on forum selection provisions in contracts. *Bremen* changed that. In that case the Supreme Court spoke as follows:

> Forum-selection clauses have historically not been favored by American courts. Many courts, federal and state, have declined to enforce such clauses on the ground that they were "contrary to public policy," or that their effect was to "oust the jurisdiction" of the court. Although this view apparently still has considerable acceptance, other courts are tending to adopt a more hospitable attitude toward forum-selection clauses. This view, advanced in the well-reasoned dissenting opinion in the instant case, is that such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances. We believe this is the correct doctrine to be followed by federal district courts sitting in admiralty.

> * * *

> Thus, in the light of present-day commercial realities and expanding international trade we conclude that the forum clause should control absent a strong showing that it should

be set aside.  Although their opinions are not altogether explicit, it seems reasonably clear that the District Court and the Court of Appeals placed the burden on Unterweser to show that London would be a more convenient forum than Tampa, although the contract expressly resolved that issue. The correct approach would have been to enforce the forum clause specifically unless Zapata could clearly show that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching. Accordingly, the case must be remanded for reconsideration.

   We note, however, that there is nothing in the record presently before us that would support a refusal to enforce the forum clause.  The Court of Appeals suggested that enforcement would be contrary to the public policy of the forum under *Bisso v. Inland Waterways Corp.*, 349 U.S. 85 (1955), because of the prospect that the English courts would enforce the clauses of the towage contract purporting to exculpate Unterweser from liability for damages to the *Chaparral.*  A contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.  See *e.g., Boyd v. Grand Trunk W. R. Co.,* 338 U.S. 263 (1949).  It is clear, however, that whatever the proper scope of the policy expressed in *Bisso*, it does not reach this case.  *Bisso* rested on considerations with respect to the towage business strictly in American waters, and those considerations are not controlling in an international commercial agreement.

*Bremen*, 407 U.S. at 9-10, 15.

In line with *Bremen*, in *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 956-57 (10th Cir.), *cert. denied* 506 U.S. 1021 (1992) we spoke as follows:

   A motion to dismiss based on a forum selection clause frequently is analyzed as a motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3).  The enforceability of forum selection, choice of law and arbitration provisions are questions of law which we review de novo.  We hold that the

parties must abide by their agreement and resolve their disputes in England, either before an English court or arbitrator, as the case may be. Three reasons persuade us: (1) the parties' undertaking is truly international in character, (2) all parties other than Riley and FirstBank are British, and (3) virtually all activities giving rise to the suggested claims occurred in England (citations omitted).

   A. Forum Selection and Choice of Law Provisions.

Riley concedes, as he must, that "the enforcement of choice of forum and choice of law clauses is consistent with recent U.S. Supreme Court decisions." However, he relies on an isolated sentence in a footnote in *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19, 105 S.Ct. 3346, 3359 n.19, 87 L.Ed.2d 444 (1985), which stated that forum selection and choice of law provisions which operate as prospective waivers of statutory antitrust claims would not be enforced as against public policy. Riley suggests that he is being deprived of all substantive rights under the federal securities laws and therefore should be relieved of his agreements on public policy grounds. On these facts, we do not read *Mitsubishi* as restrictively as Riley when *Mitsubishi* is viewed against the backdrop of Supreme Court decisions in the area.

When an agreement is truly international, as here, and reflects numerous contacts with the foreign forum, the Supreme Court has quite clearly held that the parties' choice of law and forum selection provisions will be given effect.

*Riley*, 969 F.2d at 956-57.

Under the authorities above cited, the district court did not err in accepting the recommendation of the magistrate judge that the forum selection provision in Generali's insurance policy issued Nava Moto, S.p.A., and Nava Leisure, S.p.A., be enforced. The policy was issued in Italy by an Italian insurance company to two Italian companies which designed and manufactured the ski boot here involved. There is nothing in the

record before us to show that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Bremen*, 407 U.S. at 15. The Nauerts were not a party to the insurance policy and their rights are no greater than those of Nava Leisure, USA.

The Nauerts also contend that to enforce the forum selection provision in the insurance policy would violate the "public policy" of Colorado. In this regard, the Nauerts rely on Colorado statutes. Specifically, in this regard the Nauerts rely on Colo. Rev. Stat. 10-3-902 and 903. Section 902 provides as follows:

> . . . The general assembly declares that it is a subject of concern that many citizens of this state hold policies of insurance issued by persons and insurers not authorized to do business in this state, thus presenting to such residents the often insuperable obstacle of asserting their legal rights under such policies in forums foreign to them under laws and rules of practice which they are not familiar . . . In furtherance of such state interest, the general assembly in part 9 exercises its power to protect residents of this state and to define what constitutes transacting insurance business in this state.

Section 903 provides as follows:

> (1) Any of the following acts in this state, effectuated by mail or otherwise, by an unauthorized insurer constitute transacting business in this state as such term is used in section 10-3-1105. . .

> * * * *

> (f) . . . in the transaction of matters subsequent to the effectuation of the contract and arising out of it; or in any other manner representing or assisting a person or insurer in the transaction of insurance with respect to subject of

- 7 -

insurance reside, located, or to be performed in this state.

Our reading of the two statutory provisions relied on by the Nauerts to show that Colorado's public policy precludes enforcement of the forum selection provision in the insurance policy here involved indicates, to us, that they do not apply to the present fact situation. Nor are we directed to any Colorado judicial decision interpreting those statutes in the way suggested by counsel. As Section 902 indicates, the Colorado legislature apparently was concerned with the fact that Colorado citizens held policies of insurance issued by insurers who were not authorized to do business in Colorado. That is not our case.[1]

Judgment affirmed.

ENTERED FOR THE COURT

Robert H. McWilliams
Senior Circuit Judge

---

[1] In *ABC Mobile Systems, Inc. v. Harvey,* 701 P.2d 137, 140 (Colo.Ct.App. 1985), the Colorado Court of Appeals enforced a forum selection provision in a non-insurance contract and concluded that enforcement would be neither unfair nor unreasonable. In this regard, see *Excell, Inc. v. Sterling Boiler and Mechanical, Inc.,* 106 F.3d 318, 320 (10th Cir. 1997), where we observed that there were no "material discrepancies between Colorado law and federal common law" on the validity and interpretation of a forum selection clause.